FILED
2013 Sep-26  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **RANDALL GENE MATHEWS**, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 11-KOB-3996-M** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of the Social**, | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On October 5, 2009, the claimant, Randall Mathews, applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (R. 11). The claimant alleges disability commencing on February 15, 2009, because of a general anxiety disorder and joint and muscle pain. (R. 22).

The Commissioner denied the claim initially on February 2, 2010. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on May 12, 2011. (R. 11).  In a decision dated May 19, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and, thus, ineligible for disability insurance benefits. (R. 19). On September 21, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below,

1

this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents the following issue on appeal: whether the ALJ properly applied the Eleventh Circuit's pain standard in evaluating the claimant's testimony of disabling symptoms.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if substantial evidence supports the factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

2

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

3

The pain standard applies to complaints of subjective conditions other than pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once an ALJ establishes such a symptom exists, he must consider all the evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ does not have to specifically recite the language of the test, as long as his findings and discussion indicate that he applied the standard. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).. "[When] determining whether the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain, the fact-finder must also consider the credibility of claimant's testimony." *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988).

If the Commissioner decides not to credit a claimant's testimony, he must discredit it explicitly, and articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the court accept the testimony as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## V. FACTS

The claimant has a G.E.D. and was fifty-two years old at the time of the administrative hearing. His past work experience involved working as a self-employed plumber and electrician. (R. 34). The claimant alleged that he was unable to work because of depression, anxiety, and muscle and joint pain.

### *Physical Limitations*

The claimant alleged joint pain resulting from his previous employment's lifting requirements. (R. 44).

4

On September 19, 2009, the claimant went to his primary care physician, Dr. Ronnie Lewis, for refills on his prescriptions of Nasonex, Bystolic, Turicor, Nexium, and Vytorin. He reported that he experienced no issues with pain, anxiety, or depression. (R. 173).

On January 5, 2010, at the request of Disability Determination Services, Dr. Mary Arnold performed a psychological evaluation of the claimant. The claimant stated that he last worked on February of 2009 and could no longer work because of muscle and joint pain. He continued that his joint and muscle pain worsened in the winter and was a product of lifting water heaters in his previous work as a plumber. (R. 250).

On August 18, 2010, the claimant complained of muscle pain and Dr. Marino Tulao, his psychiatrist, prescribed a mild pain medicine. (R. 295).

On October 3, 2010, the claimant denied any pain, anxiety, depression, or memory loss to Dr. Ronnie Lewis when at Rapid Care for prescription refills. (R. 275).

The record contains no other evidence regarding the claimant seeking treatment for his alleged muscle and joint pain.

*Mental Limitations*

The claimant began receiving psychological treatment at Grand View Behavioral Health Center in 2003. On December 9, 2003, the claimant reported being depressed, irritable, and fatigued. The claimant continued receiving treatment from Dr. Tulao, a psychiatrist at Grand View, through the time of the alleged onset of disability, February 15, 2009. (R. 338).

On February 26, 2009, the claimant reported feeling better and indicated that he took his medications as directed. Dr. Tulao prescribed two new medications: Effexor and Elavil. (R. 300).

On June 25, 2009, the claimant reported to Dr. Tulao that he was feeling well and

reported no problems. He stated that he continued to take his medications as prescribed. (R. 299).

On October 21, 2009, the claimant told Dr. Tulao at Grand View that he was feeling more depressed. He reported being socially isolated and withdrawn. He also reported that his mood was down. (R. 298).

On January 5, 2010, the claimant told Dr. Arnold that he saw a psychiatrist, Dr. Tulao. The claimant told Dr. Arnold that he groomed and dressed independently. He reported that he usually got up at 10:00 a.m. and that his cooking skills were limited to breakfast. He stated that he cleaned floors and did laundry. The claimant reported that he watched the morning news and listened to music on the radio. The claimant told Dr. Arnold that he and his wife go every month to visit friends in a nursing home. He also reported that his wife usually handled errands but that he would occasionally run an errand. (R. 251).

Dr. Arnold reported that the claimant appeared to have a normal gait, without an overt indicator of pain or impairment. She also reported that the claimant appeared mildly anxious but had a congruent affect. She reported that the claimant could mentally calculate sums, repeat a forward span of 6 digits and 5 backwards, recite serial sevens, and recall 3 of 3 objects after a 5 minute delay. Dr. Arnold opined that the claimant suffered from a mood disorder but found no evidence of depression, anxiety, or lack of cognitive function. She reported that the claimant was alert and oriented in all spheres and had a GAF of 56, representing only moderate symptoms or moderate difficulty in social, occupational, or school functioning. (R. 252).

On January 27, 2010, the claimant reported to Dr. Tulao that he was doing fine. He also reported that he did not like crowds and tried to avoid confrontation. (R. 297).

On February 1, 2010, Dr. Robert Estock performed a psychiatric review technique in the

6

claimant's case at the request of the Disability Determination Service. He found an impairment of mood disorder, but indicated the impairment was not severe. He reported that the claimant had moderate social restrictions; mild restrictions on activities of daily living; and mild difficulties in maintaining concentration, persistence or pace. He also reported that the claimant showed no episodes of decompensation for extended durations. (R. 254-267).

Dr. Estock examined the claimant's report to Dr. Arnold alleging panic attacks, social anxiety, anger, exhaustion, and depression. The claimant reported that he took Effexor, Clonazepam, and Lithium. The claimant reported that he stayed inside most days; took care of his cats; and went to church on Sundays. The claimant also indicated that he did not sleep regularly, but had no problems taking care of his personal needs. He stated that he prepared simple food items, did laundry, repaired things around the house, drove a car, and shopped. The claimant also reported that he played piano, watched TV, and played with pets as hobbies. The claimant said that he could follow written instructions but needed to take directions one step at a time. (R. 266).

Dr. Estock found the claimant's statements inconsistent with the findings in Dr. Arnold's report. Dr. Estock noted that the claimant reported muscle and joint pain as the reason he stopped working, not any mental impairment. (R. 266).

On March 28, 2010, the claimant reported to Dr. Tulao that he was feeling better and wanted to try a lower dose of Effexor. (R. 296).

On October 3, 2010, the claimant visited Dr. Lewis at Rapid Care Inc. of Fort Payne for a refill of the following prescriptions: Nasonex, Nexium, Tricor, Bystolic, Vytorin, and Testosterone Cypionate. The claimant denied problems with depression, anxiety, and joint pain.

(R. 275).

On October 20, 2010, the claimant visited Dr. Merle Wade due to a heightened PSA. The claimant reported to Dr. Wade that he experienced no issues with anxiety, depression, sore muscles, or joint pain. (R. 290).

On November 24, 2010, the claimant reported that he was feeling better. Dr. Tulao noted that the claimant had an appropriate affect and seemed to be doing well. (R. 294).

On December 1, 2010, the claimant reported to Dr. Wade that he was not experiencing pain, sore muscles, anxiety, or issues with orientation. (R. 286).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ on May 12, 2011. (R. 31). At the hearing, the claimant testified that he was self-employed as a plumber and electrician from 2001 to 2009. He testified that most of his prior work involved water heaters. The claimant testified that his work required him to lift water heaters weighing 120 lbs. to 140 lbs. (R. 35).

The claimant testified that he stopped working because he no longer had the strength to do the work required and his concentration was not good. He testified that, for the past 2 or 3 years, he had been dealing with depression and that the depression compromised his concentration. He indicated that the depression made it difficult for him to work around people. He testified that he became a loner and did not want to work for anyone else or around anyone else. (R. 35). The claimant stated that he had a hard time finishing the jobs he started. He indicated that some days he could not get going. (R. 36).

The claimant also testified that he lost interest in personal matters. He stated that he used

8

to play the piano and attend church, but pain in his hands and joints prevented him from playing. He continued that he had not attended church in months. He stated that the first time he had been to church in almost a year was the Sunday before the ALJ hearing for Mother's Day, but he could not stay for the entire service. (R. 36). The claimant said he left early because people began pelting him with questions. (R. 47).

The claimant testified that he received psychological therapy at Grandview Behavioral Health Center from Dr. Tulao. He testified that he complied with the medications that Dr. Tulao prescribed. He continued that he took Elavil for headaches, Effexor for mood swings and anxiety, and Clonazapam as a sleep aid. The claimant testified that the Elavil caused some drowsiness and dizziness. He stated that he also took Lithium, Vytorin, and Nexium that his primary medical doctor, Dr. Lewis, prescribed.(R. 38). The claimant testified that, although the prescriptions helped, he was still unable to go into the public and work. (R. 38).

The claimant testified that he and his wife lived alone. He stated that she did almost everything in the house. He indicated that on a good day, he could empty the dishwasher. He testified that he lacked the concentration to finish tasks he began. (R. 38).

The claimant stated that he spent his days listening to music or watching TV. He stated that he could not concentrate on TV programs and often had difficulty remembering the theme of a program. (R. 39).

The claimant testified that his wife did the shopping for the household. He stated that she worked at the Health Department and that his health insurance was through her employer. He testified that he had one child but did not see her often. He stated that he did not do things with his wife anymore. (R. 40).

9

The ALJ asked the claimant about any anger issues, and the claimant responded that his anger is far less present than when he began psychiatric treatment. (R. 41).

The ALJ asked the claimant what kind of musical background he had. The claimant testified that he traveled and played music for a living from 1993 to 1997. He testified that he played with two gospel bands, but he stopped going to church because he did not want to be around crowds.

The ALJ then asked the claimant why he reported to Dr. Arnold that he could not work because of muscle and joint pain. The claimant testified that he had a lot of muscle and joint pain for the past two years and that was the reason he could not do the lifting he used to. He continued that Dr. Arnold confused him by asking 3 or 4 questions and then referring back to previous questions. The claimant stated that he was unable to remember the questions. (R. 44).

The claimant testified that he had memory and concentration problems usually dealing with short-term memory. He stated that he did read and preferred short stories, but really enjoyed watching older movies and television shows. (R. 45). The claimant testified that he had friends but did not talk to them much. (R. 46).

The ALJ then asked a vocational expert, Dr. William Crunk, about the level of work the claimant could perform. Dr. Crunk reported that the claimant had been a musician, which is considered skilled and requires a medium level of exertion. Dr. Crunk indicated that the claimant's main work primarily had been plumbing and electricity. Dr. Crunk testified that plumber work is skilled, heavy, and non-transferrable, and that the electrician work was heavy work, requiring a medium level of exertion. He reported that the plumbing work would not transfer to light or sedentary work. The ALJ asked Dr. Crunk if an individual with the same age,

education, work experience, and residual functional capacity as the claimant would be able to return to the claimant's past relevant work as a plumber. Dr. Crunk responded that such an individual would be able to return to the claimant's past work as a plumber. (R. 48).

The ALJ then asked Dr. Crunk to assess a hypothetical involving an individual with the same age, education, and work experience as the claimant. The ALJ asked what work would be available for a claimant with the ability to perform light work; mild limitations in activities of daily living, persistence and pace; casual contact with the general public and co-workers; and non-confrontational and supportive supervision. (R. 48). Dr. Crunk said that the subject of the hypothetical could work as a machine tender, bakery worker, and cleaner. He testified that 5,900 machine tender jobs exist in the Alabama economy and 384,000 in the national economy; that 3,300 bakery worker jobs exist in Alabama and 288,000 nationally; and that 6,500 cleaning jobs exist in Alabama and 450,000 jobs nationally. (R. 49).

The ALJ then asked Dr. Crunk if an inability to maintain persistence and pace on a consistent basis would interfere with the claimant's ability to work. Dr. Crunk said that it would interfere at any exertion level. (R. 49).

*The ALJ's Decision*

On May 19, 2011, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 19). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (R. 13). Next, the ALJ found that the claimant's general anxiety disorder did constitute a severe impairment; he concluded, however, that the claimant's impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. The ALJ found the

11

claimant's muscle and joint pain did not constitute a severe impairment. The ALJ noted that the claimant denied chronic neck and pack pain and sore muscles to his primary care physician, Dr. Lewis. The ALJ also noted that Dr. Lewis reported that the claimant had normal gait and station. (R. 13-14).

The ALJ determined that the claimant's mental impairment did not meet or medically equal the criteria of a listing. The ALJ considered Dr. Arnold's evaluation that the claimant had mild restrictions on activities of daily living. The ALJ noted that the claimant reported to Dr. Arnold that he would clean the floor, do laundry, and occasionally run errands. The ALJ also noted the claimant's report to Dr. Arnold that he had no problems taking care of personal hygiene, and that he repairs things around the house. Based on the evidence from Dr. Arnold's evaluation, the ALJ determined that the claimant had no more than mild limitations on his activities of daily living. (R. 14).

The ALJ examined the claimant's mental health records from Grandview to determine what level of difficulty he experienced with social functioning. The ALJ noted that the claimant testified that he had problems being around others and stopped going to church. The ALJ also noted that the claimant's wife indicated in a written statement to the Disability Determination Service that the claimant attended church once or twice a week and played the piano. The ALJ examined records from Grandview and Rapid Care that indicated that the claimant dealt with anger issues. Based on the evidence from Grandview and Rapid Care, the ALJ determined that the claimant had moderate difficulties in social functioning. (R. 14).

The ALJ then examined the claimant's difficulty related to concentration, persistence, and pace. The ALJ noted the testimony by the claimant and his wife's statement that the claimant

could follow written instructions, but could not process more than one step at a time. The ALJ

also noted the report by Dr. Arnold that the claimant could understand instructions, perform

simple math mentally, count backwards, and remember 3 of 3 objects after a 5 minute delay.

Based on the evidence of Dr. Arnold's evaluation and the claimant's testimony, the ALJ found

that the claimant had no more than mild limitations in concentration, persistence, or pace. (R.

15).

The ALJ noted that the claimant had no episodes of decompensation and had no

psychiatric hospitalizations or emergency room visits. (R. 15).

The ALJ concluded that the claimant had the residual functional capacity to perform a full

range of work at all exertional levels but had mild limitations in activities of daily living,

concentration, pace, and persistence; moderate limitations in social functioning, that require

casual contact with the public and coworkers be casual, and non-confrontational and supportive

supervision. (R. 15).

The ALJ next applied the pain standard to assess the claimant's subjective testimony

regarding his limitations. The ALJ examined whether an underlying medically determinable

physical or mental impairment could reasonably be expected to produce the claimant's pain or

other symptoms, and second, whether that impairment could produce the claimant's pain or other

symptoms to the intensity, persistency, and limiting effects that they limit the claimant's

functioning. (R. 16).

The ALJ noted that the claimant reported that his ability to work was limited because of

panic attacks, social anxiety, anger, exhaustion, and depression. The ALJ also noted that the

claimant testified that he was easily confused and that his depression made concentration

difficult. The ALJ noted that the claimant testified that the medicine Dr. Tulao prescribed helped but did not remedy the medical problems he experienced. (R. 16).

The ALJ determined that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the ALJ did not find the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms credible to the extent that they were inconsistent with the residual functional capacity assessment. (R. 16).

The ALJ noted that the claimant received treatment at Grandview and Dr. Tulao prescribed the claimant medication. The ALJ noted that the claimant's records from Grandview indicated that the claimant did not like crowds and initially felt depressed. The ALJ then noted that the Grandview records also indicated that the claimant was doing better and feeling well every visit after his exam in October of 2009. (R. 16).

The ALJ noted that the claimant told Dr. Arnold that he was unable to work due to muscle and joint pain. The ALJ noted Dr. Arnold's report that the claimant had a mood disorder and assigned him a GAF of 56, representing only moderate symptoms or moderate difficulty in social functioning. (R. 17).

The ALJ also noted that the claimant denied joint pain, depression, anxiety, memory loss, and mental disturbance on an October 3, 2010 visit to Rapid Care. The ALJ noted the inconsistencies between the medical evidence and the claimant's testimony dealing with the impairments alleged. The ALJ discussed that, although the claimant alleged mental impairments, records from Grandview indicated improvement. The ALJ concluded that no medical evidence supported the claimant's allegation to Dr. Arnold that his muscle and joint pain kept him from

14

working. (R. 17).

The ALJ stated that the claimant may reasonably experience some moderate limitations in his social functioning; however the medical record does not support a serious reduction in his ability to engage in work. The ALJ concluded that the claimant's self-reported limitations were not consistent with the medical evidence and that the claimant alleged a greater degree of impairment than the evidence in the record supports. (R. 18).

The ALJ stated that he gave some weight to the opinion of Dr. Estock, a state agency consulting psychiatrist. The ALJ properly assigned some weight because Dr. Estock's opinion was that the claimant did not have a severe impairment. The ALJ relied more heavily on the opinions of the treating physicians. The ALJ found that based on the evidence in the record and the claimant's testimony, the claimant's general anxiety disorder constituted a severe impairment. (R.18).

The ALJ gave the opinions of the claimant's treating physicians, Dr. Tulao, Dr. Wade, and Dr. Lewis, great weight. The ALJ indicated that the treating physicians' findings were based on their medical relationships with the claimant. The ALJ noted that Dr. Tulao reported improvements in the claimant's mental issues and that both Dr. Wade and Dr. Lewis reported that the claimant alleged no pain or psychological issues. The ALJ found that the treating physician's clinical findings of occasional joint pain and slight mental limitations were consistent with the evidence as a whole, well supported and uncontradicted. (R. 18).

The ALJ noted that at the hearing Dr. Crunk testified that an individual with the claimant's age, education, work experience, and residual function would be able to return to the claimant's past relevant work as a plumber.

The ALJ concluded that the claimant was not under a disability and, thus, not entitled to disability insurance benefits.

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the pain standard in evaluating the claimant's testimony as to the severity of his symptoms. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The pain standard applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires evidence of an underlying medical condition and *either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id*.

In this case, the ALJ conceded that the claimant suffers from an underlying medical condition capable of generating the symptoms; however, he found that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully

credible to the extent they are inconsistent with the residual function capacity assessment and the medical record as a whole.

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of symptoms. First, he referenced the inconsistent statements made by the claimant. The ALJ noted that the claimant stated that he was incapable of remembering television shows and small tasks. The ALJ noted that the claimant reported that his concentration was lost on anything but written directions that the claimant had to take one thing at a time. The ALJ then noted that the claimant was able to perform a series of problems requiring both memory and concentration. The ALJ noted that the claimant successfully calculated mental math problems; repeated 6 digits forwards and 5 backwards; counted backwards from 20; and recited serial seven's during his session with Dr. Arnold. The ALJ reasonably concluded that the claimant was capable of performing memory and concentration tasks that he testified he could not do.

The ALJ noted that the claimant told Dr. Arnold that his joint and muscle pain made him stop working. The ALJ also noted that the claimant denied joint pain, anxiety, depression, memory loss, and mental disturbance during a routine visit to Rapid Care. The ALJ commented that the claimant also denied anxiety, depression, memory loss, and joint pain to Dr. Wade. The ALJ reasonably discounted the testimony as to the intensity of the claimant's impairments based on the evidence that the claimant failed to report the impairments to Dr. Arnold, Dr. Lewis, and Dr. Wade. The ALJ also noted that no objective medical evidence supports the claimant's allegation that he stopped working because of joint and muscle pain.

The ALJ also noted disparities between the claimant's testimony and the residual functional capacity that the ALJ determined. The ALJ found, based on Dr. Arnold and Dr.

17

Estock's opinions, that the claimant could have moderate limitations in social functioning. The ALJ correctly points out that those same records, however, indicated that the claimant had no more than mild limitations in both his activities of daily living and concentration, persistence and pace. The ALJ reasonably found that the claimant's testimony on his limitations was not inconsistent with the medical evidence found in Dr. Arnold and Dr. Estock's opinions.

Based on the explicit findings of the ALJ, this court concludes that he articulated reasons for discrediting the claimant's subjective testimony as to the severity of his symptoms. The ALJ also properly applied the Eleventh Circuit's pain standard, and substantial evidence supports his decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

A separate Order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 26th day of September 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE